**AFFIRM; and Opinion Filed January 3, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-15-01347-CR
_____

### JUAN MANUEL PALLARES-RAMIREZ, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the County Criminal Court No. 6
Dallas County, Texas
Trial Court Cause No. MA-1322517-G**

## MEMORANDUM OPINION

Before Justices Fillmore, Brown, and O'Neill[1]
Opinion by Justice O'Neill

A jury found appellant Juan Manuel Pallares-Ramirez guilty of driving while intoxicated with a blood alcohol concentration (BAC) level greater than 0.15. The trial court assessed his punishment at ninety days in the county jail, probated for twelve months, and a fine of $500. On appeal, appellant contends he was convicted of an offense on which he was not arraigned and to which he did not enter a plea. Appellant also argues the trial court erred by denying his motion to suppress, by rejecting his request for an article 38.23 jury instruction, and by overruling his hearsay objection to a police officer's report. We affirm the trial court's judgment.

---

[1] The Hon. Michael J. O'Neill, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

## Background

At around 10:30 on a summer evening in 2013, a witness called 911 and reported a possibly intoxicated motorist driving on a particular street in Farmer's Branch. The caller provided the license plate number of the car. Officer Garrett,[2] a Farmers Branch police officer, received the 911 dispatch and located the vehicle, which was being driven by appellant. Appellant was driving slowly. As Garrett pulled in behind appellant, he saw traffic building up behind him. Garrett also noticed appellant had a flat tire, and he believed the wheel was wobbling dangerously. Garrett stopped appellant and, when Garrett spoke to him, he smelled alcohol and noticed appellant's eyes were bloodshot. Garrett asked appellant to get out of the car and performed a series of field sobriety tests upon him. Based on appellant's performance on the tests, Garrett arrested appellant for driving while intoxicated.

The State ultimately charged appellant by information with driving while intoxicated with a BAC level of 0.15 or more, a class A misdemeanor. The jury found him "guilty as charged in the Information," and his punishment was assessed by the trial court at ninety days in the county jail, probated for twelve months, and a fine of $500. Appellant raises four issues in his challenge to the trial court's judgment.

## Improper Arraignment and Jury Charge

In his first issue, appellant contends the trial court improperly arraigned him and improperly charged the jury.[3] The State's information charged appellant with the class A misdemeanor of driving while intoxicated with a BAC greater than 0.15. Appellant complains that the trial court treated the fact of appellant's elevated BAC as an enhancement to a class B

---

[2] The record does not contain Officer Garrett's given name.

[3] The State argues this issue is multifarious and should be stricken. We understand appellant to argue two procedural errors—at the arraignment and the jury charge—rooted in a single substantive error, namely the mischaracterization and omission of an element of the charged offense. We conclude appellant's first issue embraces one specific error that purportedly played out in two ways at trial. We decline the State's request to strike the issue.

–2–

DWI charge rather than as an element of the class A misdemeanor. Because of this mischaracterization, appellant argues, the trial court erred by arraigning him on the class B offense and in presenting the elevated BAC as a punishment issue to the jury at the end of the court's guilt-innocence charge. Appellant timely objected both to the arraignment and to the jury charge on these grounds. He alleges he was harmed by the mischaracterization because he was not on notice that he was facing the class A misdemeanor charge, he was not anticipating having to defend against the class A charge, and he was not given "an opportunity to argue" that his BAC might have been greater than the class B limit (0.08) but less than the class A limit (0.15).

The State concedes error on this issue and acknowledges that the elevated BAC is in fact an element of the class A misdemeanor DWI rather than a mere enhancement. *See Navarro v. State*, 469 S.W.3d 687, 696 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (concluding the elevated BAC is "an element of a separate offense because it represents a specific type of forbidden conduct—operating a motor vehicle while having an especially high concentration of alcohol in the body."); s*ee also Castellanos v. State*, No. 13-14-00524-CR, 2016 WL 6777566, at *3 (Tex. App—Corpus Christi-Edinburg, Oct. 27, 2016, pet. filed).

We conclude, however, that appellant was not harmed by the mischaracterization of this element of his charged offense as an enhancement. Appellant was aware of the charge against him from the information, and he took the position throughout trial that the State was required to prove his BAC level was more than 0.15 as an element of the offense with which he was charged.

The jurors were also aware that the BAC threshold at issue was 0.15. The State informed all prospective jurors during voir dire that appellant was charged with a class A misdemeanor, in which the alcohol concentration at issue was 0.15 or higher; the prosecutor also informed the panel of the punishment range for a class A misdemeanor, not a class B offense. Counsel for

appellant then repeated the class A range of punishment and the 0.15 BAC standard when asking prospective jurors if they could consider the entire range of punishment. The trial court heard argument from appellant concerning how the elevated BAC would be treated at trial: appellant's objections were overruled, and he was informed that the State could submit the elevated BAC as a separate question to the jury at the bottom of the guilt-innocence charge. Thus appellant was aware that the jury could be asked whether his alcohol level exceeded the elevated standard at the end of the guilt-innocence phase of trial: he knew what he had to defend against and when he had to defend against it. Indeed, as the State points out, appellant's counsel did address the 0.15 BAC level in his closing arguments, at one point conceding that although the video might have shown someone at a 0.09 level, it did not portray someone at a level "almost three times that."

Finally, although jurors were asked only after they found appellant guilty whether his BAC level was 0.15 or more, they were asked the question, and they responded that it was "true" that his BAC was that high. Appellant has not challenged the sufficiency of the evidence supporting that finding.

We conclude the trial court erred by treating an elevated BAC level of 0.15 or more as an enhancement to—rather than an element of—a class A misdemeanor DWI. But we conclude appellant was not harmed by this error. We decide appellant's first issue against him.

### Motion to Suppress

In his second issue, appellant argues the trial court erroneously overruled his motion to suppress because Officer Garrett lacked reasonable suspicion to stop and detain appellant. Appellant contends the State's "buck-shot approach" to establishing his stop failed to meet the standard of reasonable suspicion. He addresses the various reasons raised by the State for the

–4–

stop—the 911 tip, appellant's slow rate of speed, and the malfunction in appellant's tire—and attempts to discredit each of them.

Our concern with this suppression issue, however, lies with the threshold requirement of preservation. Appellant did not file a written motion to suppress, and he did not make his oral motion until after the State rested its case. When Garrett finished testifying on the first day of trial, the trial court adjourned proceedings for the day. As proceedings continued the next day, Garrett was excused without any further questioning. The State then called Alvin Finkley, a technical supervisor of police agencies, to discuss alcohol's effect on the mental and physical faculties of an individual and appellant's test procedures and results. When Finkley was excused, the State rested. Only then did appellant's counsel state, "defense would make a motion to suppress the evidence based on an illegal stop." Counsel argued each ground the State put forward as a basis for reasonable suspicion: the 911 tip, appellant's slow driving speed, and the purported malfunction in appellant's tire. The trial court allowed lengthy arguments but eventually denied the motion to suppress.

A motion to suppress must meet all of the requirements of an objection: it must be timely and sufficiently specific to inform the trial court of the complaint. *Krause v. State,* 243 S.W.3d 95, 102 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). "To be timely, a motion to suppress must be presented before the evidence [sought to be suppressed] is admitted into evidence." *Dixon v. State,* No. 14–08–01081–CR, 2010 WL 318088, at *1 (Tex. App.—Houston [14th Dist.] Jan. 28, 2010, no pet.) (mem. op.) (not designated for publication) (citing *Nelson v. State,* 626 S.W.2d 535, 536 (Tex. Crim. App. 1981), and *Sims v. State,* 833 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd)).

Appellant did not urge his oral motion to suppress based on an allegedly unlawful stop until after Garrett had testified about the circumstances surrounding appellant's arrest and the

videotape of the stop was admitted into evidence and played for the trial court. In addition, the State had also offered testimony concerning appellant's sobriety tests before the motion was raised. We conclude that because appellant's motion to suppress was untimely, appellant failed to preserve his complaint for appellate review. *See Rodriguez v. State,* No. 05-98-01932-CR, 2000 WL 146808, at *1 (Tex. App.—Dallas, Feb. 11, 2000, no pet.) (mem. op.) (not designated for publication) (because evidence was admitted without objection, subsequent oral motion to suppress was untimely and preserved nothing for appellate review); *Moody v. State,* No. 08-01-00030-CR, 2002 WL 1340959, at *2 (Tex. App.—El Paso June 20, 2002, no pet.) (not designated for publication) (defendant failed to preserve error on motion to suppress because he "urged his oral motion to suppress after the evidence had been admitted into evidence").

We overrule appellant's second issue.

## Article 38.23 Jury Instruction

In his third issue, appellant complains the trial court erroneously denied his request for an article 38.23 instruction to the jury. That article states:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CRIM. PROC. CODE ANN. art. 38.23(a) (West 2005). In this case, the trial judge actually granted appellant's first request for an article 38.23 instruction, but she later concluded the instruction was inappropriate, saying "I don't believe that the fact that [appellant] was impeding traffic [is] in dispute." If the State proved there was no fact issue as to any one of the officer's bases for the stop, then the trial court correctly denied the instruction. *Madden v. State*, 242 S.W.3d 504, 510 (Tex. Crim. App. 2007) ("Where no [fact] issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury.") (quoting *Murphy v. State*, 640 S.W.2d 297, 299 (Tex. Crim. App. 1982)).

We look first to the trial court's articulated basis for denying the instruction, i.e., that appellant was impeding traffic. The transportation code states that "[a]n operator may not drive so slowly as to impede the normal and reasonable movement of traffic, except when reduced speed is necessary for safe operation or in compliance with law." TEX. TRANSP. CODE ANN. § 545.363(a) (West 2011). Garrett testified appellant was driving fifteen miles per hour below the speed limit on a street where it is "very rare" to encounter cars driving slowly. He testified further that cars were being held up because of appellant's driving; he saw several vehicles slowing down as they came up behind him. Appellant argues—based on the officer's dashboard camera video—that he was not, in fact, impeding traffic because cars behind him could have passed him. But Garret *believed* appellant was impeding traffic, and we cannot identify any evidence in the record controverting the reasonableness of his belief. Accordingly, there was no fact issue for the jury to decide, and the trial court correctly denied the article 38.23 instruction. *See Madden*, 242 S.W.3d at 511 (if officer has reasonable belief offense is occurring, then traffic stop is proper).

We overrule appellant's third issue.

**Hearsay Objection to Police Report**

In his fourth issue, appellant contends the trial court erred by overruling his objection to Garrett's reading from his report during his testimony. Appellant relates that the officer "took the stand, with his police report in hand unknown to Appellant's counsel. Several minutes into his testimony, Appellant's counsel noticed and promptly objected." Appellant's specific concern is that Garrett testified concerning results of appellant's field sobriety tests by consulting his report; Garrett acknowledged he had no independent recollection of those results.

Although appellant contends he "noticed" Garrett reading from his report after "[s]everal minutes," we really have no way of determining from the record how long a time he testified

from the report before an objection was made.[4]  However, our review of the record indicates that—before appellant objected—Garrett had testified to:  his initial communication with appellant and his assessment of appellant's physical appearance; his administration of the horizontal gaze nystagmus test (what it is, how it was administered, and appellant's performance of it); his administration of the "nine step walk and turn" test (what it is, how it was administered, and appellant's performance of it); and his administration of the "one leg stand" test (what it is, how it was administered, and appellant's performance of it).  At this point, Garrett had testified that appellant showed sufficient "clues" on all three tests to have been considered intoxicated.  Only when he finished testifying concerning the third and final test results did appellant object, saying "I just realized that he has his report with him, without any predicate being laid as to what it is, to refresh his recollection."

We addressed the importance of timely complaints above in the context of a motion to suppress evidence.  A timely objection gives the trial judge the opportunity to cure error.  *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991).  An objection is timely if it is made "as soon as the ground of objection becomes apparent, i.e., as soon as the defense knows or should know that an error has occurred."  *Id.*  Failure to lodge an objection in a timely manner waives error.  *Id*.  In this case, the witness had testified at length concerning the field tests he administered and the appellant's performance on those tests before any objection was raised, but appellant asked the trial court to strike all of the officer's testimony on the tests as hearsay.  We conclude appellant waived any objection to the testimony concerning test results by failing to object timely.

---

[4] For reference purposes, Officer Garrett's testimony begins on page 131 of volume 2 of the Reporter's Record.  Appellant's objection first appears on page 153 of that volume.

Moreover, after appellant's objection was overruled, the prosecutor offered Garrett's dashboard camera video, and it was admitted into evidence. As the video was shown, the prosecutor asked Garrett questions about what the jurors were seeing, including the field sobriety tests. Garret testified to the same test results that he had testified to earlier, and appellant did not object. To preserve error a party must object each time inadmissible evidence is offered or obtain a running objection. *Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004). Indeed, an earlier error in admitting evidence is cured if the same evidence comes in later without objection. *Id.* Thus, even if appellant's untimely objection did not waive error, any error was cured by appellant's failure to object to the same evidence when it came in later without objection.

We overrule appellant's fourth issue as well.

### Conclusion

We have decided each of appellant's issues against him. We affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

Do Not Publish
TEX. R. APP. P. 47

151347F.U05

–9–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JUAN MANUEL PALLARES-RAMIREZ,
Appellant

No. 05-15-01347-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court
No. 6, Dallas County, Texas
Trial Court Cause No. MA-1322517-G.
Opinion delivered by Justice O'Neill,
Justices Fillmore and Brown participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 3rd day of January, 2017.