

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-19-00387-CR

———————————————————

DUSTIN MICHAEL VARDEMAN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Court at Law No. 1
Parker County, Texas
Trial Court No. CCL1-18-0138

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

### I.  Background Facts

Appellant Dustin Michael Vardeman was arrested for driving while intoxicated after state trooper Daniel Walker stopped him for speeding.  Before pleading guilty, Vardeman filed four motions to suppress.  Vardeman's first two motions alleged that Trooper Walker did not have reasonable suspicion to stop him, probable cause to arrest him for DWI, or probable cause to support a blood search warrant.  His third motion challenged the State's authority to use the results of the blood test at trial.[1]  Vardeman's fourth motion alleged that Trooper Walker committed a *Franks* violation—namely that Trooper Walker omitted material information in his search warrant affidavit.

The trial court held two hearings and denied Vardeman's motions and thereafter issued findings of fact and conclusions of law.  In pertinent part, the trial court found that Trooper Walker provided the following credible testimony:

1. That Trooper Walker has been employed as a state trooper since 2010 and has attended additional training in DWI investigations;

2. That while patrolling traffic on I-30, Trooper Walker observed a vehicle that appeared to be speeding above the posted speed limit;

3. That before he stopped the vehicle, Trooper Walker used his laser to verify his observation that the vehicle was speeding;

---

[1]Vardeman does not challenge the trial court's denial of his third motion to suppress.

2

4. That Trooper Walker's laser indicated that the vehicle was traveling 84 mph in a 70-mph zone;

5. That Trooper Walker made contact with the driver of the vehicle, Vardeman, and he noticed that the driver was wearing a bracelet that Trooper Walker recognized as worn by a bar patron;

6. That the driver told Trooper Walker that he was coming from a bar;

7. That Trooper Walker noticed a moderate smell of alcohol coming from Vardeman's vehicle;

8. That Vardeman refused to participate in the field sobriety tests;

9. That Trooper Walker's in-car camera recorded his entire encounter with Vardeman; and

10. That Trooper Walker transported Vardeman to the hospital to obtain a warrant to procure a sample of his blood.

The trial court also found that Trooper Walker's affidavit contained sufficient probable cause to obtain the warrant—namely the fact that Vardeman was speeding, had bloodshot and watery eyes, smelled like alcohol, and admitted to drinking alcohol shortly before Trooper Walker stopped his car.[2]

Vardeman subsequently pleaded guilty to DWI and was ordered to pay a $750 fine and sentenced to serve three days in jail. This appeal followed.

On appeal, Vardeman argues that the facts were not sufficient to 1) give Trooper Walker sufficient reasonable suspicion to seize him for speeding, 2) prolong

---

[2]Vardeman has not challenged any of the trial court's findings of facts and having found no flaw with the trial court's findings of historical facts we rely on them to review the issues Vardeman raises on appeal.

3

Trooper Walker's detention of him to conduct a DWI investigation, 3) give Trooper Walker probable cause to arrest him for DWI, and 4) support a warrant to take his blood. Vardeman also argues that Trooper Walker knowingly and intentionally, or with reckless disregard for the truth, made material false statements in the form of omissions, in his search warrant affidavit.

## II. Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

Additionally, when reviewing the trial court's ruling on a suppression motion, we must view the evidence in the light most favorable to the ruling. *State v. Wiede*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2017); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's

4

legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

## III.  Reasonable Suspicion to Stop Vardeman

In his first issue, Vardeman claims that the trial court erred by failing to suppress evidence obtained from an invalid traffic stop. Specifically, Vardeman argues that Trooper Walker's stop was illegal because the trooper improperly relied on his light detection and ranging device (LIDAR) as the basis for the stop—and nothing else. Because Trooper Walker observed Vardeman speeding and the LIDAR was not the sole basis for the stop, we disagree.

### A.  Applicable Law

A detention, as opposed to an arrest, may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he or she has reasonable suspicion to believe that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is or has been engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard

5

that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id.* An officer's belief that a driver committed a traffic offense provides sufficient reasonable suspicion to detain the driver. *Tex. Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 879–80 (Tex. App.—Fort Worth 2009, no pet.) (en banc op. on reh'g) (holding that an officer's stop of a car was justified because the officer reasonably suspected the offense of speeding).

## B. Trooper Walker's detention of Vardeman was based on reasonable suspicion.

Vardeman points to *Hall v. State*, 297 S.W.3d 294 (Tex. Crim. App. 2009) for the proposition that a LIDAR device cannot serve as the sole basis of a valid stop. Vardeman's reliance on *Hall*, however, is misplaced. In reaching its decision in *Hall*, the Court of Criminal Appeals emphasized that the law enforcement officer in the case "relied solely on LIDAR technology" in making his determination that the defendant was speeding. *Id.* at 298. The Court noted that there was no evidence that the officer used the LIDAR unit to confirm his otherwise independent personal observation that the defendant was speeding. *Id.* This case is inapposite. Here, Trooper Walker testified that he believed Vardeman was speeding based on his personal observation. In fact, Trooper Walker stated that it was only *after* he saw Vardeman speeding that he confirmed his belief using the LIDAR. Contrary to Vardeman's claim, Trooper Walker did not stop him for speeding based solely on his use of the LIDAR device.

6

By itself, Trooper Walker's observation of Vardeman's speeding was sufficient to justify the traffic stop. *See Gonzalez v. State*, No 09-14-0322-CR, 2015 WL 4760094 at *3 (Tex. App.—Beaumont August 12, 2015, no pet.) (not designated for publication); *Icke v. State*, 36 S.W.3d 913, 915–16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *see also Dillard v. State*, 550 S.W.2d 45, 53 (Tex. Crim. App. 1977) (op. on reh'g) (holding that a peace officer who observes a speeding vehicle may stop the car and approach the driver). We hold that the trial court did not err by denying Vardeman's motion to suppress evidence due to the traffic stop. We overrule Vardeman's first issue.

## IV. Trooper Walker's Continued Detention of Vardeman

In his second issue, Vardeman contends that the trial court erred by denying his motion to suppress evidence obtained from the detention because Trooper Walker prolonged the detention without sufficient reasonable suspicion. Specifically, Vardeman argues that Trooper Walker had no reasonable suspicion to believe that he had driven while intoxicated and thus the prolonged stop was not justified. We disagree.

### A. Applicable law

The presence of reasonable suspicion is not carte blanche for an officer to prolong a detention and investigation. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). An investigative detention must be temporary, and the questioning must last no longer than is necessary to effectuate the purpose of the stop. *Florida v.*

7

*Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983); *Balentine v. State*, 71 S.W.3d 763, 770–71 (Tex. Crim. App. 2002); *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). Once an officer concludes the investigation of the conduct that initiated the stop, continued detention of a person is permitted for the purpose of issuing a citation. *Kothe v. State*, 152 S.W.3d 54, 65 n.43 (Tex. Crim. App. 2004) (citing *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999)); *see Coleman v. State*, 188 S.W.3d 708, 719 (Tex. App.—Tyler 2005, pet. ref'd) (holding that purpose of stop was complete upon the issuance of the citation). But once the reason for the stop has been satisfied, the stop may not be used as a "fishing expedition for unrelated criminal activity." *Davis*, 947 S.W.2d at 243 (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., concurring)).

If an officer develops reasonable suspicion during a valid traffic stop and detention that the detainee is engaged in criminal activity, however, prolonged or continued detention is justified. *See Davis*, 947 S.W.2d at 244; *Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd); *see also United States v. Brigham*, 382 F.3d 500, 510–11 (5th Cir. 2004); *McQuarters v. State*, 58 S.W.3d 250, 256 (Tex. App.—Fort Worth 2001, pet. ref'd). Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed. *Haas*, 172 S.W.3d at 52.

8

**B. Trooper Walker's continued detention of Vardeman was justified.**

During Trooper Walker's investigation of the speeding offense, he observed sufficient facts to reasonably suspect that Vardeman had been driving while intoxicated. Trooper Walker testified that when he approached Vardeman's car, he noticed the smell of an alcoholic beverage. The smell of alcohol can constitute, or contribute to, reasonable suspicion of intoxication. *See Sanchez v. State*, 582 S.W.2d 813, 814–15 (Tex. Crim. App. [Panel Op.] 1979); *Shakespeare v. State*, No. 03-00-00707-CR, 2001 WL 421003 at *3 (Tex. App.—Austin Apr. 26, 2001, no pet.) (not designated for publication); *State v. Brabson*, 899 S.W.2d 747, 749 (Tex. App.—Dallas 1995), *aff'd*, 976 S.W.2d 182 (Tex. Crim. App. 1998). And apart from the odor of alcohol, other evidence in Trooper Walker's knowledge at the time he detained Vardeman might, too, have objectively and reasonably caused Trooper Walker to suspect Vardeman of driving while intoxicated.

First, Trooper Walker stopped Vardeman for speeding. Speeding can contribute to a reasonable suspicion that the driver is driving while intoxicated. *See, e.g., Arthur v. State,* 216 S.W.3d 50, 55–56 (Tex. App.—Fort Worth 2007, no pet.); *State v. Cullen*, 227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. ref'd). Second, Vardeman admitted that he had been drinking alcoholic beverages at a bar shortly before he was stopped for speeding. These articulable facts gave Trooper Walker sufficient reasonable suspicion to detain Vardeman in order to investigate him for the offense of driving while intoxicated. *See State v. O'Neal*, No. 10-08-00042-CR, 2008

9

WL 3507773, at *4 (Tex. App.—Waco Aug. 13, 2008, pet. ref'd) (not designated for publication) (holding that the odor of alcohol and speeding can contribute to reasonable suspicion of driving while intoxicated).

Vardeman cites to our opinion in *Byram v. State*, 478 S.W.3d 905, 910–911 (Tex. App.—Fort Worth 2015, pet. granted), *rev'd on other grounds*, 510 S.W.3d 918 (Tex. Crim. App. 2017) for the proposition that the odor of alcohol alone does not justify seizing a citizen for the purpose of conducting a driving while intoxicated investigation. But Vardeman's reliance on this case is misplaced. In *Byram*, the State argued that a police officer had reasonable suspicion to detain a citizen to conduct a driving while intoxicated investigation when the officer smelled the "odor of an alcoholic beverage" in an area where there were numerous people "partying" in the officer's direct vicinity. *Id.* at 911. Because there were no articulable facts which could reasonably raise a suspicion that Byram was engaged in an alcohol-based offense, we held that the officer's stop of Byram violated his Fourth Amendment rights. *Id.* Our rejection of the State's argument centered on the fact that Byram was lawfully socializing and drinking alcohol without engaging in disruptive or illegal activities with a large group of people when the officer seized him. *Id.* We also noted that at the time the officer began his investigation of Byram for driving while intoxicated, the officer was not in the process of responding to or investigating Byram for committing a criminal offense such as a traffic violation. *Id*

In contrast, this case involves a continued detention by an officer after Vardeman's vehicle had been lawfully stopped for a traffic violation where Trooper Walker developed reasonable suspicion upon encountering Vardeman *face-to-face*. The evidence of intoxication that Trooper Walker observed and identified during his testimony at the suppression hearing—the smell of an alcoholic beverage coming from Vardeman, his observation of Vardeman speeding, and Vardeman's admission to Trooper Walker that he had been drinking alcoholic beverages shortly before he stopped him—was sufficient to provide him with reasonable suspicion that Vardeman had been driving while intoxicated. *See Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd) ("An officer is entitled to rely on all of the information obtained during the course of his contact with the citizen in developing the articulable facts which would justify a continued investigatory detention.") (citing *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex. App.—Tyler 1996, no pet.)); *see also Newman v. State*, No. 01-00-00106-CR, 2001 WL 279182, at *3 (Tex. App.—Houston [1st Dist.] Mar. 22, 2001, no pet.) (not designated for publication) (holding trial court could have found reasonable suspicion based on the appellant's nervousness and strong odor of alcohol, which was inconsistent with the appellant's explanation). Considering the totality of the circumstances objectively, we hold that Vardeman was not detained longer than reasonable suspicion justified. The trial court did not err by denying Vardeman's motion to suppress evidence based on his claim that Trooper Walker did

11

not have reasonable suspicion to prolong his detention. *See Davis*, 947 S.W.2d at 244; *Haas*, 172 S.W.3d at 52. We overrule Vardeman's second issue.

## V. Probable Cause to Arrest Vardeman for DWI

Next, Vardeman claims that the trial court erred by denying his motion to suppress evidence obtained as a result of his arrest because Trooper Walker did not have probable cause to arrest him for DWI. We disagree.

### A. Applicable law

"Probable cause" for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man to believe that the person arrested had committed or was committing an offense. *Amador,* 275 S.W.3d at 875. The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer and it requires a consideration of the totality of the circumstances facing the arresting officer. *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795 (2003).

### B. Trooper Walker had sufficient probable cause to arrest Vardeman.

Vardeman claims that Trooper Walker arrested him for the sole reason that he refused to perform the field sobriety tests. Trooper Walker's testimony at the suppression hearing and the search warrant affidavit he filled out to obtain Vardeman's blood belie this claim. Trooper Walker testified that the facts known to him at the time of the arrest were the following: 1) Vardeman was speeding at night

on a highway; 2) Vardeman was driving away from a bar where he consumed alcohol; 3) he smelled the odor of an alcoholic beverage as he spoke with Vardeman; and 4) Vardeman refused to perform the standard field sobriety tests.

Trooper Walker explained that after he arrested Vardeman, he filled out an affidavit to obtain a search warrant to collect Vardeman's blood. In the affidavit, Trooper Walker listed the facts that led him to believe Vardeman had committed the offense of DWI, specifically that Vardeman:.

- was speeding after leaving a bar;

- admitted to drinking alcohol;

- emitted an odor of alcohol when speaking;

- refused to perform the field sobriety tests; and

- had bloodshot, watery eyes.[3]

At the time Trooper Walker arrested Vardeman, the facts and circumstances within Trooper Walker's knowledge and of which Trooper Walker had reasonably trustworthy information sufficed to warrant a prudent person to believe that Vardeman had committed the offense of DWI, for which a person properly may be arrested. *See, e.g., Maxwell v. State*, 253 S.W.3d 309, 314 (Tex. App.—Fort Worth 2008, pet. ref'd), following *State v. Garrett*, 22 S.W.3d 650, 655 (Tex. App.—Austin 2000)

---

[3]Trooper Walker testified that he was unsure if he noticed Vardeman's bloodshot, watery eyes before or after he arrested him for DWI.

(upholding police officer's reliance on suspect's refusal to participate in field sobriety tests in determining whether police officer had probable cause to arrest suspect); *Learning v. State*, 227 S.W.3d 245, 249 (Tex. App.—San Antonio 2007, no pet.) (holding officer had probable cause to arrest defendant for driving while intoxicated where officer observed defendant swerve into adjacent lane, smelled alcohol on defendant's breath, and defendant admitted he had been drinking) (citing *Dyar v. State*, 125 S.W.3d 460, 464 (Tex. Crim. App. 2003) (finding probable cause to arrest where driver admitted drinking alcohol and officer smelled alcohol and observed slurred speech, unintelligible answers, and red glassy eyes); *cf. Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) ("Evidence of the appellant's refusal to submit to a breath test is relevant . . . [because it] tends to show a consciousness of guilt on his part."); *Russell v. State*, 290 S.W.3d 387, 397 (Tex. App.—Beaumont 2009, no pet.) ("In addition, the jury in this case could have inferred from Russell's refusal to take a breath test that the officer believed that Russell was intoxicated.").

Vardeman further argues that Trooper Walker lacked probable cause to arrest him because the trooper did not believe that Vardeman had lost the normal use of his physical or mental faculties. To the extent that Trooper Walker was expressing his subjective belief of Vardeman's mental and physical condition, such a belief is irrelevant because an arresting officer's state of mind (including an officer's subjective beliefs and subjective reasons for an arrest) holds no relevance in a court's probable-cause determination. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S. Ct. 588, 593

(2004); *Garcia v. State*, 827 S.W.2d 937, 942–43 (Tex. Crim. App. 1992); *see also Horton v. California*, 496 U.S. 128, 138, 110 S. Ct. 2301, 2311 (1990) ("Evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer."). However, assuming Trooper Walker's testimony amounted to an objective observation of Vardeman's condition, it should be noted that the penal code's definition of intoxication provides two methods of proof: either through evidence of impairment or through evidence of blood alcohol content of .08 or more. *Navarro v. State*, 469 S.W.3d 687, 694 (Tex. App.—Houston [14th Dist.] 2015, pet ref'd); *see Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). Trooper Walker need not have observed a loss of physical or mental faculties by Vardeman to have sufficient probable cause to arrest him for DWI; he only needed to have knowledge of facts and circumstances that would warrant a prudent police officer in believing that Vardeman's blood alcohol content was .08 or more. *Amador,* 275 S.W.3d at 875 (citing *Beck*, 379 U.S. at 91). And here, Trooper Walker had sufficient facts to support his conclusion that Vardeman's blood alcohol content was .08 or higher.

Trooper Walker knew that Vardeman was speeding on the highway after leaving a bar where he had been drinking alcoholic beverages, and Trooper Walker could smell the odor of an alcoholic beverage when he spoke to Vardeman through his passenger side window. Additionally, Vardeman told Trooper Walker that he would not perform the field sobriety tests. *See Bartlett*, 270 S.W.3d at 153 (reciting that

15

an officer can consider a person's refusal to participate in the field sobriety tests as evidence that the person is intoxicated). The record contains abundant evidence from which the trial court could have reasonably determined that a reasonable police officer could have concluded that Vardeman's blood alcohol content was .08 or more and that he was intoxicated. *Amador*, 275 S.W.3d at 875.

Based on the evidence at the suppression hearing and reasonable inferences therefrom, discussed above, the trial court could have reasonably concluded that, at the time and place in question, Trooper Walker had facts and circumstances within his knowledge sufficient to warrant a prudent person in believing that Vardeman had committed the offense of driving while intoxicated. In other words, the record reasonably supports the trial court's conclusion that the State carried its burden of proving that Trooper Walker's warrantless arrest of Vardeman was properly supported by probable cause. Thus, we hold that the trial court did not err when it denied Vardeman's motion to suppress evidence obtained from Trooper Walker's arrest of Vardeman. We overrule Vardeman's third issue.

## VI.    The Blood Search Warrant Affidavit

In his fourth issue, Vardeman argues that the trial court erred by denying his motion to suppress evidence obtained from the blood search warrant because Trooper Walker's affidavit failed to contain sufficient probable cause to support the search. We disagree.

**A. Appliable law**

A search warrant for the extraction of blood from a person who the police believe to have committed an intoxication offense must be based on probable cause that evidence of that offense will be found through the execution of a blood-draw search warrant. *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019). Probable cause "exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence pertaining to a crime will be found." *Washington v. State*, 660 S.W.2d 533, 535 (Tex. Crim. App. 1983). In determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit. *See State v. Elrod*, 538 S.W.3d 551, 554 (Tex. Crim. App. 2017) ("[A]lthough the magistrate's determination of probable cause must be based on the facts contained within the four corners of the affidavit, the magistrate may use logic and common sense to make inferences based on those facts."). The determination of whether probable cause exists is a "totality of the circumstances" inquiry, based on the magistrate's reasonable reading of the affidavit, but the magistrate may not act as a mere "rubber stamp." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).

Generally, a reviewing court applies a presumption of validity regarding a judge's determination that a search warrant affidavit supports a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 2691 (1978). As a result, when reviewing a judge's probable cause determination, a reviewing court—which in this context can be a trial judge or an appellate court—must ordinarily "view the magistrate's decision to issue the warrant with great deference." *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012); *see also Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S. Ct. 2085, 2091 (1984) ("A deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."). A trial judge or an appellate court examining a judge's probable cause determination "must uphold the magistrate's decision so long as the magistrate had a substantial basis" for his finding. *Duarte*, 389 S.W.3d at 354; *see also Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317 (1983) (holding the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause" for issuance of a search warrant); *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011) ("As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination.").

**B. The search warrant affidavit**

The pre-printed search warrant affidavit form that Trooper Walker filled out contains introductory and concluding statements and eight numbered paragraphs, each of which contains brief statements, and some of which include blank lines for the affiant to use to conform the affidavit to the specific facts of a given case. The introductory statement contains a line on which the affiant, Trooper Walker, listed his name and identified himself as a peace officer with the Texas Department of Public Safety.

The first numbered paragraph contains lines on which an affiant may provide identifying information about the suspect. In that paragraph, Trooper Walker identified the suspect as Dustin Michael Vardeman, a Caucasian male, and provided his date of birth. Paragraphs 2 and 3, which are entirely pre-printed and contain no additions by Walker, state that the suspect is in the custody of the affiant who believes that the suspect has possession of and is concealing human blood, which constitutes evidence that he committed the offense described in Paragraph 4. The next paragraph contains date and time blanks and the elements of the offense of driving while intoxicated. Trooper Walker conformed the blank lines in this paragraph to reflect that on September 23, 2017, Vardeman committed the offense of driving while intoxicated. Paragraph 5 requires the affiant to state why he stopped the suspect's vehicle. Trooper Walker indicated that he stopped Vardeman's vehicle because it was speeding over 70 mph. Paragraph 6 contains a list of observations that might lead a

19

person to reach a conclusion about whether a suspect was intoxicated while driving. The list includes options followed by boxes which an affiant can check indicating the presence of that condition. In the boxes following the option titled "eyes," Trooper Walker checked "bloodshot" and "Watered." Trooper Walker also checked the box following "Breath/Odor of Alcoholic Beverage" labeled "Moderate." In the line following "Additional observations," Trooper Walker wrote "Admitted to drinking, coming from a bar."

Paragraph 7 of the affidavit form states that the affiant asked the suspect to submit to the field sobriety tests and provides for the affiant to indicate whether the suspect refused or agreed. Trooper Walker checked the box "refused."

Paragraph 8 of the affidavit is preprinted and contains no additions by Trooper Walker. That paragraph states

> Wherefore, Affiant asks for a search warrant that will authorize Affiant or their agent to search the person of the suspected party for the property described above and seize the same as evidence that the offense described was committed and that suspected party committed said offense.

Trooper Walker then signed and dated the affidavit and submitted it to a district judge who issued a search warrant to extract Vardeman's blood.

**C.** **Trooper Walker's affidavit supplied sufficient probable cause to support the search warrant.**

Trooper Walker swore in his affidavit that after pulling Vardeman over for speeding, he smelled the odor of an alcoholic beverage coming from Vardeman and

20

that Vardeman's eyes appeared to be bloodshot and watery. When Trooper Walker asked Vardeman whether he had been drinking alcoholic beverages, Vardeman admitted that he had and stated that he had driven from a bar. Vardeman refused to perform the field sobriety tests.

After learning the facts contained in the search warrant affidavit, Trooper Walker requested a search warrant for Vardeman's blood specimen because he believed it would produce evidence that Vardeman committed the offense of driving while intoxicated. A district judge reviewed the evidence included in the sworn affidavit and determined that probable cause existed for the issuance of a search warrant for Vardeman's blood specimen.

The facts found in the four corners of Trooper Walker's affidavit and the reasonable inferences derived from them, taken as a whole, provided a substantial basis by which the judge could have reasonably concluded that a blood-alcohol test had a fair probability or a substantial chance to uncover evidence that Vardeman had been driving while intoxicated. *See State v. Jordan*, 342 S.W.3d 565, 569–72 (Tex. Crim. App. 2011); *State v. Crawford*, 463 S.W.3d 923, 928 (Tex. App.—Fort Worth 2015, pet. ref'd) (op. on reh'g) (holding search warrant affidavit established probable cause necessary for issuance of blood search warrant from defendant who was arrested for DWI; affidavit reflected that defendant was stopped for speeding, officer smelled alcohol on defendant's breath, defendant's eyes appeared to be bloodshot, and defendant admitted that he had been drinking). Because the judge had a substantial

basis to support his probable-cause determination, the trial court (and this court on appeal) was required to defer to that determination. We overrule Vardeman's fourth issue.

## VII.    *Franks* Violation

In his last issue, Vardeman claims the trial court erred by denying his motion to suppress the blood test evidence because Trooper Walker knowingly and intentionally or with reckless disregard for the truth *included* false statements in his probable cause affidavit. Vardeman argues, however, that the probable cause affidavit *omitted* material information that would have eliminated probable cause.

### A.    Applicable law

Under *Franks v. Delaware*, a defendant who makes a substantial preliminary showing that a false statement was made in a warrant affidavit knowingly and intentionally, or with reckless disregard for the truth, may be entitled to a hearing upon request. *Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007); *see Franks,* 438 U.S. 154, 98 S. Ct. 2674. An affidavit supporting a search warrant begins with a presumption of validity. *Cates v. State*, 120 S.W.3d 352, 355 (Tex. Crim. App. 2003). To be granted a *Franks* hearing, a defendant must: (1) allege deliberate falsehood or reckless disregard for the truth by the affiant, specifically pointing out the portion of the affidavit claimed to be false; (2) accompany these allegations with an offer of proof stating the supporting reasons; and (3) show that when the portion of the affidavit alleged to be false is excised from the affidavit, the remaining content is

22

insufficient to support issuance of the warrant. *Harris*, 227 S.W.3d at 85. We review a trial court's ruling on a *Franks* suppression issue under a mixed standard of review that gives almost total deference to the trial court's ruling on questions of fact that depend upon evaluations of credibility and demeanor but review de novo the application of the law. *Jones v. State*, 338 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

Some intermediate appellate courts have held that *Franks* equally applies to omissions, but the Texas Court of Criminal Appeals has not yet done so. *See Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *see also Renteria v. State*, 206 S.W.3d 689, 703–04 (Tex. Crim. App. 2006) (assuming but not deciding *Franks* applies to material omissions); *but see Brooks v. State*, No. 13-20-00085-CR, 2021 WL 2461062, at *8–9 (Tex. App.—Corpus Christi–Edinburg June 17, 2021, no pet. h.) (mem. op., not designated for publication) (holding *Franks* applies to material omissions in the probable cause affidavit); *Gonzales v. State*, 481 S.W.3d 300, 311 (Tex. App.—San Antonio 2015, no pet.) (holding the *Franks* applies to material omissions and that the trial court should "determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause for the defendant's arrest, and if probable cause is not established, then the search warrant would be voided and the fruits of the search excluded.").

### B. The complained-of omissions were not material.

Assuming *Franks* applies to material omissions, Vardeman would be required, at minimum, to show that Trooper Walker withheld material information. *See Renteria*, 206 S.W.3d at 703–04; *Brooks*, 2021 WL 2461062 at *8–9; *Gonzales*, 481 S.W.3d at 311. In his *Franks* motion and during the hearing on his motion, Vardeman pointed out that the pre-printed blood search affidavit set out six categories of signs of intoxication that Trooper Walker could have indicated he observed. The categories are clothing, balance, walk, speech, eyes, and breath/odor of alcoholic beverage. As Vardeman points out, the form allows the affiant to choose from a range of four options in each category. This portion of Trooper Walker's affidavit is set out below:

While talking to the suspected party, I detected and/or observed the following:

| | | | | |
|---|---|---|---|---|
| Clothing: ☐ Disorderly | ☐ Stained | ☐ Soiled | ☐ Torn | ☐ Normal |
| Balance: ☐ Swayed | ☐ Uses Support | ☐ Fell | ☐ Normal | |
| Walk: ☐ Swayed | ☐ Unsteady | ☐ Staggered | ☐ Fell | ☐ Normal |
| Speech: ☐ Slurred | ☐ Incoherent | ☐ Loud | ☐ Soft | ☐ Normal |
| Eyes: ☒ Bloodshot | ☒ Watered | ☐ Dilated | ☐ Heavy | ☐ Normal |
| Breath/Odor of Alcoholic Beverage: | ☐ Strong | ☒ Moderate | ☐ Slight | ☐ None |

As reflected above, Trooper Walker checked the boxes indicating that Vardeman's eyes were bloodshot and watery and that he emitted a moderate odor of an alcoholic beverage. Trooper Walker did not check any boxes in the speech, balance, walk, and clothing categories. During the hearing on Vardeman's first two motions to suppress, Trooper Walker testified that Vardeman appeared normal in each of the categories.

24

Vardeman argues that Trooper Walker omitted material information when he failed to check the boxes in the affidavit that indicated his balance, speech, walk, and clothing were normal. Vardeman argues that if Trooper Walker had checked "normal" as to those categories, the district judge would not have found probable cause to support the blood search warrant. We do not agree.

As we pointed out, the penal code's definition of intoxication provides two methods of proof: either through evidence of impairment or through evidence of blood alcohol content of .08 or more. *Navarro*, 469 S.W.3d at 694. The judge who reviewed the affidavit did not need to find probable cause that Vardeman was impaired; he only needed to find probable cause that a blood draw would provide evidence that Vardeman's blood alcohol content was .08 or more. *See Washington*, 660 S.W.2d at 535; *Navarro*, 469 S.W.3d at 694. Vardeman's bloodshot eyes and the moderate odor of alcohol on his breath supplied sufficient probable cause to believe that Vardeman's blood alcohol content was .08 or more. But additionally, the affidavit reflects that Trooper Walker observed Vardeman speeding on the highway and that Vardeman told Trooper Walker that he was coming from a bar where he had consumed alcoholic beverages. Finally, in his affidavit, Trooper Walker stated that Vardeman refused to perform the field sobriety tests. The affidavit contains sufficient probable cause for the judge to have believed that a blood draw would provide evidence that Vardeman was intoxicated.

Applying the presumption of validity, we hold that even if the omitted "normal" information was included in Trooper Walker's probable cause affidavit, the judge had a substantial basis for determining probable cause existed that Vardeman was intoxicated—that his blood alcohol content was .08 or more. Therefore, the trial court did not err by determining that Vardeman failed to show that the omissions in this case were material. We overrule Vardeman's fourth issue.

## VIII. Conclusion

Having overruled Vardeman's issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: October 14, 2021