**Affirmed and Memorandum Opinion filed April 28, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00262-CV

---

**BERTOLDO BALDERAS, AS NEXT FRIEND OF RIGOVERTO BALDERAS, Appellant**

**V.**

**ZURICH AMERICAN INSURANCE COMPANY, Appellee**

---

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2017-81573**

---

## MEMORANDUM OPINION

The Texas Workers' Compensation Act ("TWCA") provides that the recovery of workers' compensation benefits is the exclusive remedy for a legal beneficiary of an employee covered by workers' compensation insurance for a work-related death or injury. Tex. Lab. Code Ann. § 408.001(a). If the employee is intoxicated at the time of the injury, then the TWCA bars the employee from recovering compensation from an insurance company. *Id.* § 406.032(1)(A). The

TWCA further provides avenues for judicial review of an administrative decision by the Division of Workers' Compensation ("DWC") of the Texas Department of Insurance ("TDI") regarding compensability or eligibility for the amount of income or death benefits. *See* Tex. Gov't Code Ann. §§ 2001.171–.178; Tex. Lab. Code Ann. §§ 410.251, 410.252, 410.255, 410.301.

In this appeal, appellant Bertoldo Balderas, as next friend of his son Rigoverto Balderas, seeks review of the trial court's judgment following an appeal from an adverse administrative decision by a DWC appeals panel.[1] The trial court granted appellee Zurich American Insurance Company ("Zurich") a partial summary judgment, ruling that Rigoverto's employer was CorTech, LLC ("CorTech") and that CorTech had a workers' compensation insurance policy issued by Zurich. Following a trial, the jury found Rigoverto was intoxicated at the time of his injury.

In six issues we have rephrased and reorganized, Bertoldo argues that the trial court erred by (1) giving deference to the decision by the administrative law judge ("ALJ"), (2) considering Zurich's summary-judgment evidence, and (3) entering an interlocutory partial summary judgment that Rigoverto was an employee of CorTech, and further argues that (4) there is legally insufficient evidence that Rigoverto was intoxicated, (5) there was an error in the jury charge, and (6) the admission of Rigoverto's laboratory blood results violated his constitutional rights and guarantees. We affirm.

## I. BACKGROUND

At approximately 9:00 a.m. on December 17, 2015, Rigoverto sustained injuries while at work at Houston Foam Plastics ("HFP"). While in the process of

---

[1] We will refer to Rigoverto and Bertoldo by their first names to avoid confusion.

2

dumping Styrofoam into a grinder, Rigoverto's left arm was pulled into the machine, causing serious injuries to his left arm, upper left body, and his face. An ALJ determined that: (1) Rigoverto's employer at the time of his injury was CorTech, who carried a workers' compensation insurance policy issued by Zurich; and (2) Rigoverto was precluded from obtaining benefits under the policy because he was intoxicated at the time of his injury. Rigoverto pursued review by an administrative appeals panel, which affirmed the ALJ's decision. Rigoverto then sought judicial review of the appeals panel's decision in the district court. *See* Tex. Lab. Code Ann. §§ 410.251, 410.301(a).[2]

## A.    PARTIAL SUMMARY JUDGMENT

At the trial court, Zurich filed a traditional motion for partial summary judgment, arguing that CorTech was Rigoverto's employer at the time of his injuries and that CorTech was covered by a workers' compensation insurance policy issued by Zurich. Zurich attached multiple exhibits in support of its motion, including: copies of the decisions by the appeals panel and the ALJ; relevant pages of CorTech's workers' compensation insurance policy with Zurich; copies of Rigoverto's pay checks for pay periods preceding his injury showing his employer as "Port City Staffing"; a Client Services Agreement between HFP and "Port City Staffing"; an Asset Purchase Agreement between CorTech and Job Express of Wyoming, Inc. ("Job Express"); Job Express's assumed name certificate from the Texas Secretary of State for the name "Port City Staffing"; copies of Rigoverto's

---

[2] Bertoldo's petition is not included in the clerk's record on appeal. *See* Tex. Labor Code Ann. § 410.302(b) ("A trial under this subchapter is limited to issues decided by the appeals panel and on which judicial review is sought. The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved."). Zurich does not argue or dispute that Bertoldo sought judicial review of a determination of Rigoverto's employer at the time of his injury and whether Rigoverto's employer was covered by a workers' compensation insurance policy.

pay checks showing CorTech as his employer on the date of his injury, following the Asset Purchase Agreement completed on November 30, 2015; documentation from TDI showing CorTech carried a workers' compensation policy issued by Zurich; an affidavit by Michael Greco, CorTech's in-house counsel; and an affidavit by Stan Braun, Zurich's adjuster assigned to Rigoverto's claim.

Bertoldo filed his own competing traditional motion for partial summary judgment, arguing that Rigoverto's employer was Port City Staffing and that Port City Staffing was not covered by a workers' compensation insurance policy at the time of Rigoverto's injuries. Bertoldo also objected to all of Zurich's summary judgment exhibits. On November 14, 2018, without ruling on Bertoldo's evidentiary objections, the trial court signed an interlocutory order granting Zurich's partial motion for summary judgment and denying Bertoldo's motion.

### B.    JURY TRIAL

Prior to trial on the issue of intoxication, Bertoldo filed a motion seeking to exclude the lab results of a blood test performed on Rigoverto at 10:16 a.m. on December 17, 2015 while Rigoverto was treated at a hospital, which showed Rigoverto's blood alcohol concentration ("BAC") to be 0.117.[3] Bertoldo presented multiple arguments in support of his assertion that the lab results were unreliable and would mislead the trier of fact. Bertoldo supplemented his motion to exclude, arguing that the results were inadmissible under the Health Information Portability and Accountability Act ("HIPAA") because Rigoverto did not consent to the blood test. The trial court denied Bertoldo's motion to exclude.

At trial, Bertoldo presented testimony from Douglas Posey, M.D. ("Dr.

---

[3] The hospital also performed another blood test at 12:30 p.m., which showed Rigoverto's blood alcohol concentration to be 0.066. Rigoverto's motion only sought exclusion of the results of the first blood test.

4

Posey"), an expert in forensic pathology and forensic toxicology. During Posey's testimony, Bertoldo introduced part of Rigoverto's medical records from the hospital into evidence, including records which revealed Rigoverto's BAC of 0.117 at 10:16 a.m. Zurich presented testimony from Patricia Rosen, M.D. ("Dr. Rosen"), a medical toxicologist with board certifications in internal medicine, emergency medicine, and medical toxicology. Using a retrograde extrapolation calculation,[4] Dr. Rosen testified that she estimated Rigoverto's whole-blood BAC was 0.098 at 10:16 a.m. and 0.123 at the time of his injuries.

After the parties rested, Bertoldo moved for a directed verdict on the bases that no evidence was presented of Rigoverto's whole-blood alcohol concentration, or Zurich did not present evidence demonstrating that Rigoverto did not have the normal use of his mental and physical faculties. *See id.* § 401.013(a) (defining "intoxication"); *see also* Tex. Penal Code Ann. § 49.01(2) (defining "intoxicated"). The trial court denied the motion.

At the jury charge conference, Bertoldo objected to the jury charge on the bases that it: (1) informed the jury of the DWC's reliance of Rigoverto's BAC measurement of 0.117 without distinguishing that it was serum instead of whole-blood, thereby failing to meet the standard for BAC in *Navarro v. State*, 469 S.W.3d 687 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); (2) did not include an explanation of the legal standard for retrograde extrapolation calculation, contrary to the Texas Court of Criminal Appeals' opinion in *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001); and (3) violated the de novo standard of review articulated by the Texas Supreme Court in *Quick v. City of Austin*, 7 S.W.3d 109 (Tex. 1999) because the charge included that the administrative

---

[4] "Retrograde extrapolation is the computation back in time of the blood-alcohol level . . . ." *Mata v. State*, 46 S.W.3d 902, 908–09 (Tex. Crim. App. 2001).

5

decision was based on a BAC of 0.117 that was proven with inadmissible evidence. The trial court overruled the objections and rejected Bertoldo's proposed charge.

The jury found that Rigoverto's injury occurred while he was intoxicated. On March 9, 2020, the trial court signed a final judgment affirming the appeals panel's decision. Bertoldo timely appealed.

## II. JUDICIAL REVIEW OF ADMINISTRATIVE APPEALS PANEL'S DECISION

The TWCA provides that the recovery of workers' compensation benefits is the exclusive remedy of the employee or the employee's legal beneficiary against the employer for a work-related injury or death sustained by the employee if an employee is covered by workers' compensation insurance. Tex. Lab. Code Ann. § 408.001(a); *W. Steel Co. v. Altenburg*, 206 S.W.3d 121, 123 (Tex. 2006) (per curiam). At the administrative level, disputed claims for benefits proceed through a three-step process: a benefit-review conference, a contested-case hearing, and an administrative appeal. *Tex. Workers' Compensation Com'n v. Garcia*, 893 S.W.2d 504, 514 (Tex. 1995); *see* Tex. Lab. Code Ann. §§ 410.021–.034, 410.151–.169, 410.201–.209; *see also State Office of Risk Mgmt. v. Martinez*, 539 S.W.3d 266, 268–69 (Tex. 2017). A party who has exhausted his administrative remedies and is aggrieved by a final decision of the appeals panel may seek judicial review. Tex. Lab. Code Ann. §§ 410.251–.252; *Cont'l Cas. Ins. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 398 (Tex. 2000).[5]

---

[5] "The workers' compensation act was adopted to provide prompt remuneration to employees who sustain injuries in the course and scope of their employment. . . . The act relieves employees of the burden of proving their employer's negligence, and instead provides timely compensation for injuries sustained on-the-job. . . . In exchange for this prompt recovery, the act prohibits an employee from seeking common-law remedies from his employer, as well as his employer's agents, servants, and employees, for personal injuries sustained in the course and scope of his employment." *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 142 (Tex. 2003)

If a party seeks judicial review of a final appeals panel's decision regarding "compensability or eligibility for or the amount of income or death benefits," then the district court reviews the appeals panel's decision under a modified de novo standard of review. *Rodriguez v. Serv. Lloyds Ins.*, 997 S.W.2d 248, 253 (Tex. 1999); *see* Tex. Lab. Code Ann. § 410.304; *In re Tyler Asphalt & Gravel Co.*, 107 S.W.3d 832, 841 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). The "modified de novo review" means that the factfinder is informed of the appeals panel's decision but is not required to accord it any weight. *See Garcia*, 893 S.W.3d at 515; *In re Tyler Asphalt & Gravel Co.*, 107 S.W.3d at 84. The party appealing the final decision of the appeals panel bears the burden of proof by a preponderance of the evidence. Tex. Lab. Code Ann. § 410.303.

In a bench trial, the court in rendering its judgment on any issue concerning compensability or eligibility for or the amount of income or death benefits shall consider the decision of the appeals panel. *Id.* § 410.304(b); *see Tex. Mut. Ins. v. Sonic Sys. Int'l, Inc.*, 214 S.W.3d 46, 476 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). In a jury trial, the court, before submitting the case to the jury, informs the jury in the court's instructions, charge, or questions to the jury of the appeals panel's decision on each disputed issued concerning compensability or eligibility for or the amount of income or death benefits. Tex. Lab. Code Ann. § 410.304(a).

### III. ALJ's Decision

In the title for his first issue, Bertoldo argues that "[t]he trial court gave deference to the ALJ's decision that vitiated official seal agency documents regarding 'coverage.'" However, under this issue, Bertoldo argues that the ALJ erred in considering certain evidence to reach her findings that: (1) CorTech was

_____

(quoting *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 206–07 (Tex. 2000)).

7

Rigoverto's employer, and (2) Rigoverto was intoxicated at the time of his injury. Notably, Bertoldo does not argue that the trial court erred in granting Zurich's motion for summary judgment based on any of the evidence considered by the ALJ, nor does he argue that the ALJ's decision or any of the other evidence discussed under this issue created an issue of fact supporting a denial of summary judgment. *See* Tex. R. Civ. P. 166a. Furthermore, Bertoldo does not articulate how the trial court improperly deferred to the ALJ's decision while carrying out its de novo review as mandated by statute. *See* Tex. Lab. Code Ann. § 410.304.

Here, the judgment before us is the trial court's judgment following the modified de novo review of the DWC appeals panel's decision. *See id.*; *Rodriguez*, 997 S.W.2d at 253. Accordingly, the propriety of the ALJ's decision itself or of the evidence considered by the ALJ are immaterial to our determination of whether reversible error exists in the trial court's judgment. *See* Tex. R. App. P. 44.1(a)(1) (providing that no error shall be reversed on appeal on the ground that the trial court made an error of law unless the appellate court concludes the error probably caused the rendition of an improper judgment); *see also* Tex. Labor Code Ann. § 410.302(a) ("The records of a contested case hearing conducted under this chapter are admissible in a trial under this subchapter in accordance with the Texas Rules of Evidence."); *id.* § 410.306(a) (providing that, in a judicial appeal from a DWC appeals panel's decision, "Evidence shall be adduced as in other civil trials."); *In re Tyler Asphalt*, 107 S.W.3d at 841–842 ("New evidence (other than that presented to the hearing officer), as well as the [DWC's] record, is admissible at trial." (citing Tex. Lab. Code Ann. § 410.306(a), (b))).

For the reasons discussed below in part V, we conclude that Zurich established its right to summary judgment as a matter of law, irrespective of the ALJ's decision. Accordingly, we reject Bertoldo's broad assertion that the trial

8

court erred by giving deference to the ALJ's decision and overrule his first issue.[6]
*See* Tex. Lab. Code Ann. § 410.304; *Martinez*, 539 S.W.3d at 277–78; *In re Tyler Asphalt & Gravel Co.*, 107 S.W.3d at 841.

## IV. SUMMARY-JUDGMENT EVIDENCE

In his second issue, Bertoldo argues that Zurich did not meet its summary judgment burden and reasserts his objections to Zurich's summary-judgment evidence.

### A. STANDARD OF REVIEW

We review the trial court's ruling on the admissibility of evidence for an abuse of discretion. *Gharda USA, Inc v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to guiding rules or principles. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

### B. APPLICABLE LAW

Summary-judgment evidence must be presented in a form that would be admissible at trial. *In Estate of Guerrero*, 465 S.W.3d 693, 706 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (en banc). "It is well settled that while '[t]he same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings,' 'the rules of error preservation also apply.'" *FieldTurf USA, Inc. v. Pleasant Grove Indep. Sch. Dist.*, No. 20-0507, __ S.W.3d __, __, 2022 WL 627769, at *6 (Tex. Mar. 4, 2022) (quoting *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 163–64 (Tex. 2018) (per curiam)); *see also In Estate of Guerrero*, 465 S.W.3d at 707 ("Objections to defects in the

---

[6] To the extent Bertoldo argues under this issue that the lab result showing Rigoberto's BAC of 0.117 was inadmissible, we address this argument in Bertoldo's sixth issue below where he specifically raises this argument.

substance of summary-judgment proof are not required to be first presented to, and ruled on by, the trial court.").

A ruling on objections to summary-judgment evidence may be implied, but only if the implication was clear. *See Seim*, 551 S.W.3d at 166 (noting that an order granting a party's motion for summary judgment does not in itself clearly imply a ruling sustaining the party's objections to summary judgment evidence, at least where "sustaining the objections was not necessary for the trial court to grant summary judgment"); *see, e.g.*, *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 179 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (concluding that trial court implicitly overruled objections to summary-judgment evidence when the trial court added handwritten notes to the order providing that the trial court considered "*all summary judgment evidence*"); *see also In re State*, No. 14-18-01036-CV, 2018 WL 6722351, at *3 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet.) (mem. op.) ("An implied ruling can be found only where the trial court's actions or other statements in the record unquestionably indicate a ruling.").

## B. ANALYSIS

Bertoldo lodged objections to all of Zurich's summary-judgment exhibits. On appeal, Bertoldo argues that the trial court erred by implicitly overruling his objections when it signed the order granting Zurich's motion. Zurich argues that Bertoldo waived his evidentiary challenges by failing to secure a ruling on his objections. We agree with Zurich.

The trial court's order granting Zurich's partial motion for summary judgment provides:

> Upon consideration of Plaintiffs Amended Traditional Motion for Partial Summary Judgment (the "Plaintiffs Motion" filed 10/19/2018), Defendant's Counter-Motion for Partial Summary Judgment (the

"Defendant's Motion" filed 10/15/2018), summary judgment evidence and numerous evidentiary objections, the Court rules as follows:

> The Court has worked through a mountain of irrelevant fact disputes and has found a very stubborn factual and material molehill at the bottom: On the date in question Mr. Balderas was employed by Cortech, LLC, which was a covered employer. The Division of Workers' Compensation got it right. The Plaintiffs Motion is DENIED; the Defendant's Motion is GRANTED.

The trial court's order provides that the court considered "numerous evidentiary objections," but it is not clear from the order which objections the trial court overruled or sustained. Accordingly, we conclude that Bertoldo failed to obtain a ruling on his objections, and therefore, he failed to preserve this issue for our review. *See* Tex. R. App. P. 33.1(a); *Delfino v. Perry Homes*, 223 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("[A] trial court's ruling on an objection to summary judgment evidence is not implicit in its ruling on the motion for summary judgment; a ruling on the objection is simply not 'capable of being understood' from the ruling on the motion for summary judgment."); *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 436 n.4 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that it is the responsibility of the objecting party to obtain a ruling at or before the time the trial court rules on the summary judgment motion). We overrule Bertoldo's second issue.

## V. SUMMARY JUDGMENT

In his third issue, Bertoldo challenges the trial court's partial summary judgment in favor of Zurich. Bertoldo argues that Rigoverto was not an employee covered by a worker's compensation insurance policy because (1) "undisputed unambiguous contract documents establish Port City Staffing as [Rigoverto's] employer" and (2) Port City Staffing was not covered under a worker's compensation insurance policy. Rigoverto further argues that, because he was not

covered by a workers' compensation policy, the trial court lacked jurisdiction.

## A. STANDARD OF REVIEW

We review the trial court's rendition of summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). In reviewing the grant of a traditional motion for summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging all reasonable inferences in favor of the nonmovant, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *see* Tex. R. Civ. P. 166a(c). When, as here, the parties file cross-motions for summary judgment on overlapping issues, and the trial court grants one motion and denies the other, we review the summary judgment evidence supporting both motions and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

## B. APPLICABLE LAW

Under the TWCA, "Employer" means, "unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage." Tex. Labor Code Ann. § 401.011(18); *see also Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140–43 (Tex. 2003) (concluding that an employee may have more than one employer for purposes of the TWCA). The TWCA also defines "employee" as "each person in the service of another under a contract of hire, whether express or implied, or oral or written." Tex. Lab. Code Ann. § 401.012(a); *Wingfoot*, 111 S.W.3d at 138.

"[A]n employer has 'workers' compensation insurance coverage' if the employer has either obtained an approved insurance policy or secured the payment of compensation through self-insurance as provided under the [TWCA]." *Wingfoot*, 111 S.W.3d at 137 (citing Tex. Lab. Code Ann. § 401.011(44)). An "assumed name" is not itself a legal entity but rather a word or phrase by which a person may be made known to the public. *CA Partners v. Spears*, 274 S.W.3d 51, 69 n.11 (Tex. App.—Houston [14th Dist.] 2008, pet. denied); *see Matice Enters., Inc. v. Gibson*, No. 01-04-00913-CV, 2005 WL 1838018, at *5 (Tex. App.—Houston [1st Dist.] Aug. 4, 2005, no pet.) (mem. op.) ("[A]dding 'd/b/a' to a name does not constitute the creation of a separate legal capacity; rather, it is a term of identification."); *see also* Tex. Bus. Orgs. Code Ann. § 5.051 ("A domestic entity . . . having authority to transact business in this state may transact business under an assumed name by filing an assumed name certificate . . . ."); *Fettner v. Daniel Jackson & Assocs., P.C.*, 14-19-00497-CV, 2021 WL 126396, at *2 (Tex. App.—Houston [14th Dist.] Jan. 14, 2021, no pet.) (mem. op.) ("'D/b/a,' which means 'doing business as,' indicates that the person or business whose name precedes the acronym uses an assumed name.") (footnote omitted).

## C. ANALYSIS

On appeal, Bertoldo refers us to the Client Services Agreement, signed on December 5, 2015, between HFP and Port City Staffing, stating that Port City Staffing would provide HFP with employees. Bertoldo argues that the Client Services Agreement between HFP and Port City Staffing was executed after the Asset Purchase Agreement between CorTech and Job Express, and that the Client Services Agreement does not contain any reference to CorTech. Thus, Bertoldo argues, this evidence raises a fact issue as to whether Rigoverto's employer was Port City Staffing or CorTech. Bertoldo's argument, however, is premised on Port

City Staffing being a separate entity from CorTech and from Job Express, and the record conclusively establishes that Port City Staffing was an assumed name for Job Express that was purchased by CorTech, not a separate entity. *See CA Partners*, 274 S.W.3d at 69 n.11; *Fettner*, 2021 WL 126396, at *2.

Here, Rigoverto's pay checks prior to the Asset Purchase Agreement listed Port City Staffing as his employer. However, following the Asset Purchase Agreement (and the Client Services Agreement), executed November 30, 2015, Rigoverto's pay checks listed CorTech as his employer. Furthermore, the Asset Purchase Agreement provides that CorTech purchased the following assets from Job Express:

> Assets of the Business include, but are not limited to, all assets on current balance sheet, Clients, Relationships, any equipment, trade fixtures, leasehold, leasehold improvements, contract rights, software and software licenses, databases, other licenses, franchises, goodwill, covenant not to compete, trade secrets, patents, intellectual property, trade name(s) including JEX Staffing and Port City Staffing, Temps under billing, customer lists, telephone and fax numbers, works in progress, orders in process, and finished products . . . .

Greco's affidavit, which was attached to Zurich's motion for summary judgment, provides that:

> When CorTech acquired the new business, the employees of Job Express of Wyoming, Inc. d/b/a Port City Staffing and JEX Staffing became CorTech employees and a notice of workers' compensation insurance coverage in the form of a Certificate of Liability Insurance was issued by Zurich . . . to JEX Staffing 'A CorTech Company' under CorTech's workers' compensation policies . . . .

We conclude that Zurich proved as a matter of law that Port City Staffing was an assumed name for CorTech and that CorTech was Rigoverto's employer at the time of his injury. *See Wingfoot*, 111 S.W.3d at 142–43, 149; *Bailey*, 894 S.W.2d at 759; *CA Partners*, 274 S.W.3d at 69 n.11.

As to whether CorTech was covered by a workers' compensation insurance policy, CorTech submitted as part of its summary judgment proof a copy of its policy with Zurich, the affidavit of Braun, and certified copies of relevant TDI records. The policy issued by Zurich lists the insured as "CORTECH, LLC; CORTECH INTERNATIONAL AR LLC; CORTECH REALTY LLC 901 ABERNATHY RD UNIT 100 ATLANTA GA 30328." The policy also provides that it is applicable in Texas from September 1, 2015, through September 1, 2016. Braun's affidavit provides:

> On November 30, 2015, Zurich received direction from CorTech to extend workers' compensation insurance coverage under CorTech's policy to JEX Staffing "A CorTech Company".

> When CorTech acquired the new business a notice of workers' compensation insurance coverage in the form of a Certificate of liability Insurance was issued by Zurich . . . to JEX Staffing "A CorTech Company" under CorTech's workers' compensation policies 5611530-02 and WC 5611531-02. See Exhibit 2, a true and correct copy of the Certificate of Liability Insurance for JEX Staffing "A CorTech Company". See also Exhibit 3, a true and correct copy of CorTech's workers' compensation policy WC5611531-02, which extends coverage to JEX Staffing "A CorTech Company". It is the position of Zurich American Insurance Company that Port City Staffing and JEX Staffing were covered by CorTech's workers' compensation insurance policy, and I have reviewed documentation in the course of my investigation of the claim that supports Rigoverto Balderas was the employee of CorTech. He was paid by CorTech, as shown by his pay check statement, attached hereto as Exhibit 4.

> My investigation into the coverage question on this claim reveals that JEX Staffing d/b/a Port City Staffing was covered by CorTech's worker's compensation policy on the date of injury.

The records from TDI indicate that CorTech had a workers' compensation insurance policy issued by Zurich from September 1, 2015, through September 1, 2016. We conclude that CorTech proved as a matter of law that it was covered by a workers' compensation policy at the time of Rigoverto's injuries.

15

Bertoldo argues next that CorTech did not establish as a matter of law that it was covered by a workers' compensation insurance policy because the endorsements for CorTech's policy with Zurich did not list "Port City Staffing." We reject this argument because, as noted above, an assumed name is not a separate entity but rather a word or phrase by which a company may be known to the public, and the policy at issue here listed CorTech as an insured entity. *See CA Partners*, 274 S.W.3d at 69 n.11; *Matice Enters., Inc.*, 2005 WL 1838018, at *5.

Finally, Bertoldo argues that CorTech did not establish as a matter of law that it was covered by a workers' compensation insurance policy because the endorsements for CorTech's policy with Zurich did not list a Houston address. In support of his argument, Bertoldo points to an opinion from the Eastland court of appeals. *See Morales v. Martin Res., Inc.*, 183 S.W.3d 469, 472 (Tex. App.—Eastland 2005, no pet.).

In *Morales*, the injured worker was an employee of Select Professional Staffing and was at the same time placed as a temporary employee with Martin Resources, Inc., located in Odessa, Texas. *Id.* at 470. After suffering an injury at Martin Resources, Inc.'s plant in Odessa, Morales brought suit against Select Professional Staffing; Martin Resources, Inc.; and Martin Operating Partnership, L.P. *Id.* The trial court found, following the submission of a motion for summary judgment, that Martin Resources, Inc. was covered by a workers' compensation policy. *Id.* The Eastland court of appeals reversed because it concluded that a fact issue existed as to whether Martin Resources, Inc.'s facility in Odessa was covered by workers' compensation insurance. *Id.*

In reaching its conclusion, the Eastland court relied on the language in the policy and the policy's endorsements:

Martin Resources, Inc. also submitted a workers' compensation

16

insurance policy as summary judgment evidence. The policy named "Martin Resource Management Corporation" as the insured . . . . A "Martin Resources, Inc.," located in Kilgore, Texas, was listed in an endorsement to the policy. A "Martin Resource Management Corporation," located in Odessa, Texas, was also listed in an endorsement to the policy. However, a "Martin Resources, Inc.," located in Odessa, Texas, was not listed as an insured in the policy or in any endorsement to the policy. Martin Resources, Inc. did not present any summary judgment evidence showing (1) the relationship, if any, between Martin Resources, Inc. in Kilgore and Martin Resources, Inc. in Odessa or (2) the relationship, if any, between Martin Resource Management Corporation and Martin Resources, Inc. in Odessa. In the absence of any evidence explaining the relationship, if any, among these entities, the insurance policy presented by Martin Resources, Inc. created a fact issue as to whether Martin Resources, Inc. had workers' compensation insurance covering its Odessa facility.

*Id.* at 473.

Here, CorTech is listed as the insured in the policy, Rigoverto's injury did not occur on CorTech's premises or facility, and CorTech's policy with Zurich does not create a fact issue as to whether CorTech was covered by a workers' insurance policy in Texas. *Cf. id.* Thus, we are not persuaded by Bertoldo's reliance on this authority. We overrule Bertoldo's third issue.

## VI. JURY'S INTOXICATION FINDING

In his fourth issue, Bertoldo argues that there is no legally admissible proof that Rigoverto was intoxicated. We construe Bertoldo's issue as a challenge to the legal sufficiency of the evidence underlying the jury's finding.[7]

---

[7] To the extent Bertoldo's argument raises evidentiary challenges to the admissibility of the blood test evidence, we reject that argument for the reasons discussed below in part VIII, where we address Bertoldo's sixth issue specifically challenging the admissibility of the lab results.

17

## A. STANDARD OF REVIEW & APPLICABLE LAW

The TWCA defines "intoxication" as (1) having an alcohol concentration as needed to qualify as intoxicated under § 49.01(2) of the Texas Penal Code, or (2) not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of an alcoholic beverage, or other substances, regulated under state law. Tex. Labor Code Ann § 401.013(a); *see* Tex. Penal Code Ann. § 49.01(2)(B) (defining "intoxicated" as "having an alcohol concentration of 0.08 or more" per 100 milliliters of blood); *see also id.* § 49.01(2)(A) (defining "intoxicated" as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body"). Because Bertoldo is appealing from an adverse decision by the appeals panel, Bertoldo bore the burden of proof in the trial court to prove by a preponderance of the evidence that Rigoverto was not intoxicated at the time of his injury. *See* Tex. Lab. Code Ann. § 410.303; *see also Transcontinental Ins. v. Crump*, 330 S.W.3d 211, 214 (Tex. 2010).

When a party attacks the legal sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). "In reviewing a 'matter of law' challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* "If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id.* "The point of error should be sustained only if the contrary proposition is conclusively established." *Id.*

18

**B. ANALYSIS**

We must determine if there is any evidence that supports the jury's finding that Rigoverto was intoxicated at the time of his injury.[8] *See id.* If there is no evidence to support that finding, then we will review the entire record to determine whether the evidence conclusively established that Rigoverto was not intoxicated at the time of his injury. *See id.*

Here, the jury heard evidence that Bertoldo's blood tests performed at the hospital at 10:16 a.m., approximately one hour after he suffered his injuries, revealed a BAC of 0.117. While Dr. Posey testified that he believed Rigoverto's blood tests at the hospital were performed on serum instead of whole blood, he conceded that he was not certain whether the hospital performed Rigoverto's blood alcohol test on plasma or serum.

Dr. Rosen testified that there were two measurements of Rigoverto's BAC taken at the hospital: (1) a test at 10:16 a.m., which indicated a BAC of 0.117; and (2) a test at 12:30 p.m., which indicated a BAC of 0.066. Using these measurements, Dr. Rosen calculated Rigoverto's whole blood BAC at the time of his injury to be "142 milligrams per deciliter or 0.123 . . . ." We conclude that there is some evidence supporting the jury's finding that Rigoverto was intoxicated when he suffered his injuries. *See* Tex. Labor Code Ann § 401.013(a); Tex. Penal Code Ann. § 49.01(2)(B); *Dow Chem. Co.*, 46 S.W.3d at 242.

Bertoldo argues that the evidence is insufficient to prove intoxication, which he argues can only be proven with test results performed on whole blood, not blood serum, and that "Dr. Rosen's retrograde extrapolation is 'junk science' . . . ." In support of this contention, Bertoldo points to an opinion from the Texas Court of

---

[8] Specifically, the jury charge asked the jury "Did **Rigoverto Balderas'** injury occur while he was not in a state of intoxication?" (emphasis in original). The jury answered "No."

Criminal Appeals and an opinion from this court in a criminal appeal. *See Mata*, 46 S.W.3d at 908–09; *Navarro*, 469 S.W.3d at 696–98.

Contrary to Bertoldo's argument, *Mata* does not stand for the propositions that (1) BAC may *only* be proven by tests performed on whole blood, as opposed to serum; or (2) retrograde extrapolation is "junk science." In *Mata*, an appeal from a conviction for driving while intoxicated, the court of criminal appeals noted that it is the trial court's responsibility to determine whether proffered scientific evidence is sufficiently reliable and relevant to the jury. *Mata*, 46 S.W.3d at 908. The question before the court was whether the expert's testimony *in that case* established that the retrograde extrapolation calculation conducted *in that case* was reliable, not whether the scientific application of retrograde extrapolation was itself unreliable. *See id.* at 904, 914–16 ("We believe that the science of retrograde extrapolation can be reliable in a given case."). The court further noted that

> [i]f the State had more than one test, each test a reasonable length of time apart, and the first test were conducted within a reasonable time from the time of the offense, then an expert could potentially create a reliable estimate of the defendant's BAC with limited knowledge of personal characteristics and behaviors.

*Id.* at 916. Notably, *Mata* does not mention serum or whole blood. Accordingly, we reject Bertoldo's argument that the opinion in *Mata* mandates that there was no evidence here that Rigoverto's BAC was higher than 0.08 at the time of his injury.

*Navarro*, an opinion from this court in another appeal from a driving while intoxicated conviction, involved retrograde extrapolation as a method for calculating whole blood BAC from blood serum BAC measurements. *See Navarro*, 469 S.W.3d at 697. At issue in Navarro was the BAC required as an element of the class A misdemeanor offense of driving while intoxicated, which is at least 0.15. *Id.* at 696–97. This court noted that "blood," as used in the Penal Code, means

20

"whole blood." *See id.* at 697–98. Notably, we stated in *Navarro* that "[t]he State's expert converted the blood plasma results using a scientifically accepted method and concluded that appellant's whole blood had a BAC of 0.132." *Id.* at 697. However, because there was no testimony that appellant's whole blood had a BAC that was 0.15 or more at the time the analysis was performed—a necessary element of the offense there—we agreed that the trial court's finding of that element was unsupported by the record. *Id.* at 698. Contrary to Bertoldo's argument, we did not conclude that an individual's BAC may only be proved through a laboratory analysis of whole blood. *See id.* at 697–98. Accordingly, we reject Bertoldo's argument that *Navarro* mandates that there was no evidence here that Rigoverto's BAC was higher than 0.08 at the time of his injury.

We overrule Bertoldo's fourth issue.

## VII. JURY CHARGE

In his fifth issue, Bertoldo argues there was error in the charge because it contained conflicting information. Bertoldo argues that the information was conflicting because the ALJ's decision "was based on the unconsented *serum* screening," while the jury charge instructed the jury that "blood" means "whole blood."

### A. APPLICABLE LAW & STANDARD OF REVIEW

The trial court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict. *Transcon. Ins.*, 330 S.W.3d at 221 (citing Tex. R. Civ. P. 277). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Union Pac. R.R. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002) (citing Tex. R. Civ. P. 278). As relevant to this case, the Labor Code requires that before submitting the

21

case to the jury, the trial court must inform the jury in the court's charge of the appeals panel's decision on each disputed issued concerning compensability or eligibility. Tex. Lab. Code Ann. § 410.304(a).

We review a trial court's decision on jury charge issues for an abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam); *Sloane v. Goldberg B'Nai B'Rith Towers*, 577 S.W.3d 608, 616 (Tex. App.— Houston [14th Dist.] 2019, no pet.). A trial court's jury charge error is reversible error only if the error probably caused the rendition of an improper verdict. Tex. R. App. P. 44.1(a)(1); *Sloane*, 577 S.W.3d at 616.

## B. ANALYSIS

Bertoldo complains of the following additional instruction in the jury charge: "The Texas Department of Insurance, Division of Workers' Compensation, determined that at the time of his injury, **Rigoverto Balderas** had a blood alcohol concentrate of .117 and also determined that **Rigoverto Balderas'** injury occurred while he was in a state of intoxication." (emphasis in original). Contrary to Bertoldo's argument, the trial court is required by statute to inform the jury in the court's charge of the appeals panel's decision on each disputed issued concerning compensability or eligibility. *See* Tex. Lab. Code Ann. § 410.304(a). Thus, we cannot conclude that the trial court erred when it overruled Bertoldo's objections to the jury charge. *See id.*; *Worford*, 801 S.W.2d at 109. Furthermore, the charge correctly informed the jury that "blood" means whole blood and it correctly instructed the jury that, to find Rigoverto was intoxicated at the time of his injuries, it must find that his whole blood BAC was higher than 0.08 or that Rigoverto did not have normal use of his mental or physical faculties resulting from the voluntary consumption of alcohol. We presume that the jury followed the trial court's instructions in the absence of evidence to the contrary. *In re Commitment of Baiza*,

22

633 S.W.3d 743, 753 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *see Shannon Med. Ctr. v. Triad Holdings, III, L.L.C.*, 601 S.W.3d 904, 912 (Tex. App.—Houston [14th Dist.] 2019, no pet.). We overrule Bertoldo's fifth issue.

## VIII. ADMISSIBILITY OF BLOOD TEST RESULT

In his sixth issue, Bertoldo argues that the admission of the unconsented serum screening revealing a BAC of 0.117 violated his constitutional rights and guarantees. *See* U.S. Const. Amend. IV; Tex. Const. art. I, § 9; *but see State v. One (1) 2004 Lincoln Navigator, VIN # 5LMFU27RX4LJ28242*, 494 S.W.3d 690, 694–95 (Tex. 2016) ("Both the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution prohibit unreasonable searches and seizures and require the exclusion of evidence obtained in violation of that prohibition in *criminal* trials." (quoting *State v. $ 217,590.00 in U.S. Currency*, 18 S.W.3d 631, 636 (Tex. 2000) (Abbott, J., concurring) (emphasis in original))).

Bertoldo argues that:

[t]he admission of [Rigoverto's] *unconsented serum* screening test was a violation of his constitutional protections guaranteed under the Fourth Amendment, and, by extension, a violation of his rights to due process under the Fifth Amendment (taking without notice of his rights to benefits) and equal protection under the Fourteenth Amendment (held to a different standard than other state and Texas PENAL CODE cases).

(emphasis in original). Bertoldo also argues that the trial court erred in admitting the test result because Rigoverto's medical records are statutorily protected under the HIPAA.

Bertoldo, however, introduced Rigoverto's medical records into evidence during Dr. Posey's testimony, including the result of the test performed at 10:16 a.m. revealing Rigoverto's BAC of 0.117. Accordingly, we conclude that Bertoldo waived his complaints to the admissibility of the results of Rigoverto's blood test

performed at 10:16 a.m. *See Sw. Elec. Power Co. v. Burlington Northern R.R. Co.*, 966 S.W.2d 467, 473 (Tex. 1998) ("A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character."). We overrule Bertoldo's sixth issue.

## IX. CONCLUSION

We affirm the trial court's judgment.


/s/     Margaret "Meg" Poissant
        Justice


Panel consists of Chief Justice Christopher and Justices Hassan and Poissant.